IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| GARY WALL, #1133749, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:19-cv-00260 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| HAROLD CLARKE, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

Plaintiff Gary Wall, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against 31 individuals employed by or associated with the Virginia Department of Corrections ("VDOC"). Wall's second amended complaint asserts violations of his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution, as well as violations of state law. Thirty of the defendants (collectively, the "State Defendants") have filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons set forth below, the court will grant the motion in part, and deny it in part.

## I.   BACKGROUND

Wall was previously incarcerated at Red Onion State Prison ("Red Onion"), where the events giving rise to this action allegedly occurred. The fact section of Wall's second amended complaint contains nearly 90 numbered paragraphs and references numerous exhibits

---

[1] Those defendants are as follows: Harold Clarke, Malcolm Taylor, M. Elam, Jeffrey Kiser, J. Artrip, I. Hamilton, Arvil Gallihar, Larry Collins, Amee Duncan, Walter Swiney, Christopher Gilbert, C. Stanley, J. Kiser, James Lambert, G. Adams, R. Boyd, Stacy Day, Brian Meade, J. Dickenson, A. Mullins, Kelly Moore, J. Looney, Larry Mullins, B. Begley, Emily Sowards, R. Kegley, J. Messer, J. King, C. Parr, and R. Bivens. (Mem. in Supp. of Mot. to Dismiss 1 [ECF No. 78].)

submitted with the original complaint. The court has reviewed all of the factual allegations and referenced exhibits. But for the sake of brevity, the court will not recite all of the allegations here. Instead, the court will summarize Wall's claims and the pertinent allegations necessary to address the State Defendants' motion.

In Claim I, Wall alleges that A. Duncan, L. Collins, Harold Clarke, Jeffrey Kiser,[2] J. Artrip, M. Elam, Lt. J. Kiser, Lt. G. Adams, Lt. J. Lambert, Sgt. B. Meade, Sgt. J. Dickenson, K. Moore, J. Looney, and E. Sowards retaliated against him for filing grievances and lawsuits, in violation of the First Amendment. (Second Am. Compl. ¶ 111 [ECF No. 67].) The alleged retaliation included "fabricated disciplinary charges; denial of outside recreation and showers; unfavorable classification; and the extensive, arbitrary continued use of security level-'S' segregation confinement." (*Id.*) With respect to Clarke, Jeffrey Kiser, Artrip, and Elam, Wall alleges that each of these defendants "knew or should have known" of the purported retaliation because of his complaint letters, grievances, and disciplinary appeals. (*Id.*)

In Claim II, Wall alleges that various defendants violated his right to due process under the Fourteenth Amendment. (*Id.* ¶ 112.) First, Wall claims that L. Mullins, W. Swiney, L. Collins, Jeffrey Kiser, and M. Elam violated his right to due process by denying him access to video surveillance evidence he requested in connection with several disciplinary charges for which Wall was found guilty. (*Id.*) On July 21, 3017, Wall was found guilty of disobeying an officer, resulting in lost telephone privileges for 30 days. (*Id.* ¶ 61; Compl. Attach. 20 [ECF No. 1-3 at 30].) On February 14, 2018, Wall received a $15 fine for engaging in a lewd or

---

[2] Throughout this opinion, the court will refer to Jeffrey Kiser by his full name to distinguish him from Lt. J. Kiser, who is also named as a defendant.

obscene act in the presence of another. (Second Am. Compl. ¶¶ 70–72; Compl. Attach. 21 [ECF No. 1-4 at 2].) At a third disciplinary hearing, held on February 16, 2018, Wall was fined $15 and ordered to pay $11 in restitution for the charge of intentionally destroying state property. (Second Am. Compl. ¶¶ 73–74; Compl. Attach. 22 [ECF No. 1-4 at 10].) And on June 15, 2018, Wall was found guilty of threatening bodily harm and disobeying an order; he lost telephone privileges for 30 days. He was also found guilty of tampering with security devices and received a $15 fine for that charge. (Second Am. Compl. ¶ 92; Compl. Attachs. 24–26 [ECF No. 1-4 at 20, 28, 34].) All of the convictions were upheld on appeal, with the exception of the conviction for engaging in a lewd or obscene act. That conviction was overturned by Jeffrey Kiser and expunged from Wall's disciplinary record. (Second Am. Compl. ¶ 76; Compl. Attach. 21 [ECF No. 1-4 at 7].)

In his second due process claim, Wall asserts that he was held in segregation or solitary confinement for over three years without being afforded certain procedural protections. (Second Am. Compl. ¶¶ 113–15.) Specifically, Wall contends that he did not receive: (1) any formal or informal hearing before the Dual Treatment Team; (2) any formal or informal hearing before the External Review Team; (3) a formal hearing before the Institutional Classification Authority ("ICA") within 90 days; or (4) meaningful periodic review hearings. (*Id.*) Wall names Harold Clarke, M. Taylor, M. Elam, Jeffrey Kiser, J. Artrip, I. Hamilton, A. Gallihar, W. Swiney, A. Duncan, L. Collins, S. Day, C. Gilbert, G. Adams, Lt. J. Kiser, J. Lambert, R. Boyd, R. Kegley, C. Stanley, and E. Sowards as defendants with respect to this claim.

In Claim III, Wall alleges that various defendants violated his rights under the Eighth Amendment. Wall first alleges that J. Dickenson, A. Mullins, and B. Begley used excessive force against him by aggressively pulling his arms through a tray slot, causing injuries to his wrists and forearms. (*Id.* ¶ 116.) Wall further alleges that L. Collins and C. Gilbert "witnessed the assault and failed to intervene," and that R. Boyd and J. Artrip exhibited deliberate indifference "by failing to take remedial actions . . . after being made aware of this assault." (*Id.*) Additionally, Wall asserts that L. Collins, A. Duncan, I. Hamilton, J. Artrip, A. Gallihar, M. Taylor, M. Elam, Jeffrey Kiser, and Harold Clarke are subject to supervisory liability for the use of excessive force and other alleged misconduct. (*Id.*)

As part of Claim III, Wall asserts an Eighth Amendment conditions-of-confinement claim against Harold Clarke, Jeffrey Kiser, M. Taylor, L. Collins, J. Artrip, and M. Elam. In particular, Wall alleges that his conditions of confinement in segregation "posed a substantial risk of serious psychological and emotional harm," and that these defendants "acted with deliberate indifference to that risk." (*Id.*) With respect to his conditions of confinement, Wall alleges that he was confined in his cell—alone—for 24 hours per day on non-recreation and non-shower days; that he was subjected to degrading cavity searches on a daily basis; that his only form of recreation was occasional time alone in a dog-kennel-like cage; and that he was not permitted to participate in vocational programs or earn good-time credits. (*Id.* ¶¶ 33–34.)

In Claim IV, Wall alleges that all of the named defendants conspired to deprive him of his constitutional rights. (*Id.* ¶ 118.)

In addition to the foregoing claims under federal law, Wall asserts two claims under state law. In Claim V, Wall alleges that J. Dickenson, A. Mullins, and B. Begley committed

assault and battery by pulling his arms through the tray slot. (*Id.* ¶ 119.) In Claim VI, Wall alleges that various defendants "were willfully and wantonly negligent in their duties." (*Id.* ¶ 120.)

## II.   STANDARD OF REVIEW

The State Defendants have moved to dismiss certain claims under Rule 12(b)(6). Motions to dismiss under this rule test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," merely offering "labels and conclusions," "naked assertion[s] devoid of further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

Where, as here, a complaint was filed *pro se*, it must be construed liberally. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). Nonetheless, a *pro se* complaint "must still 'state a claim to relief that is plausible on its face.'" *Sakyi v. Nationstar Mortg., LLC*, 770 F. App'x 113, 113 (4th Cir 2019) (quoting *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014)).

### III.   ANALYSIS

#### A.   Claims under § 1983

Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "To state a claim under § 1983[,] a plaintiff 'must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017) (quoting *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011)). The plaintiff must also show "that the official charged acted personally in the deprivation of the plaintiff['s] rights." *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017). "The doctrine of *respondeat superior* has no application under" § 1983. *Id.* (internal quotation marks and citations omitted); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution.").

#### 1.   Claim I

In Claim I, Wall alleges that various defendants violated his First Amendment rights by retaliating against him for filing grievances and other lawsuits. The retaliation purportedly included "fabricated disciplinary charges; denial of outside recreation and showers; unfavorable classification; and the extensive, arbitrary continued use of security level-'S' segregation confinement." (Second Am. Compl. ¶ 111.)

"The First Amendment protects the right to petition the Government for a redress of grievances, and the Supreme Court has recognized that prisoners retain this constitutional

right while they are incarcerated." *Martin v. Duffy*, 858 F.3d 238, 249 (4th Cir. 2017) (internal quotation marks and citations omitted). They also retain "the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2020). In order to state a colorable retaliation claim under § 1983, a plaintiff must allege: (1) that he engaged in activity protected by the First Amendment; (2) that the defendant took some action that adversely affected his First Amendment rights; and (3) that there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. *Martin*, 858 F.3d at 249.

In this case, the State Defendants do not challenge the sufficiency of Wall's allegations with respect to L. Collins, A. Duncan, Lt. J. Kiser, Lt. G. Adams, R. Boyd, Lt. J. Lambert, Sgt. B. Meade, Sgt. J. Dickenson, K. Moore, J. Looney, or E. Sowards.[3] They do, however, argue that Wall has not stated a viable claim against Harold Clarke, Jeffrey Kiser, J. Artrip, or M. Elam. For the following reasons, the court agrees.

Harold Clarke is the Director of the VDOC, and at all times relevant to the complaint, M. Elam held the position of Western Regional Administrator, Jeffrey Kiser held the position of Warden at Red Onion, and J. Artrip worked as an Assistant Warden. (Second Am. Compl. ¶¶ 4–7.) Wall does not set forth any factual allegations suggesting that these supervisory officials personally engaged in retaliatory conduct. Instead, Wall asserts that they "knew or should have known" about the alleged retaliation by subordinate employees as a result of Wall's letters, grievances, and disciplinary appeals. (*Id.* ¶ 111.)

---

[3] These defendants have filed an answer as to this claim. (*See* Answer [ECF No. 76].)

As a general rule, "mere knowledge of [a constitutional violation] does not suffice" to establish personal liability under § 1983. *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018). This is true even for supervisors. *See Iqbal*, 556 U.S. at 677 (rejecting the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution"). In order to state a claim of supervisory liability under § 1983, a plaintiff must allege facts sufficient to show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[;] and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted); *see also Slakan v. Porter*, 737 F.2d 368, 372-74 (4th Cir. 1984) (discussing the "heavy burden of proof" that a plaintiff assumes when asserting a claim of supervisory liability).

To adequately plead the first element, a plaintiff must allege "that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (internal quotation marks omitted). With respect to the second element, "a plaintiff may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." *Id.* (internal quotation marks omitted). Finally, as to the third element, "[c]ausation is established when the plaintiff demonstrates an affirmative causal link between the supervisor's

inaction and the harm suffered by the plaintiff." *Shaw*, 13 F.3d at 799 (internal quotation marks omitted).

Here, Wall's second amended complaint does not set forth sufficient factual allegations to satisfy these elements. Wall does not plausibly allege that any of the named supervisory officials continuously failed to act in the face of "documented widespread" retaliation by subordinate employees. *Id.* The mere fact that Wall submitted grievances or letters complaining of retaliation is "insufficient to meet the heavy burden in supervisory liability cases." *Gullet v. Wilt*, No. 88-6797, 1989 WL 14614, at *2 (4th Cir. Feb. 21, 1989) (unpublished) (citing *Slakan*, 737 F.2d at 373); *see also Thompson v. Commonwealth*, 878 F.3d 89, 111 (4th Cir. 2017) (affirming the dismissal of a supervisory-liability claim on summary judgment where the plaintiff "only ma[de] conclusory allegations without any specific facts that [the supervisory] defendants had knowledge that retaliation was taking place and that they acquiesced in the retaliatory acts"); *Cecil v. Winston*, No. 7:2-cv-00349, 2021 WL 3642054, at *6 (W.D. Va. Aug. 17, 2021) (holding that the fact that the plaintiff sent a letter complaining of retaliation was insufficient to state a claim of supervisory liability against the jail administrator). Thus, Claim I will be dismissed with respect to Harold Clarke, Jeffrey Kiser, M. Elam, and J. Artrip.

2.   **Claim II**

In Claim II, Wall asserts that various defendants violated his right to due process under the Fourteenth Amendment by denying his requests for video evidence in connection with certain disciplinary proceedings and by confining him in segregation for an extended period without providing adequate procedural protections. The court will address each claim in turn.

### a.     Denial of video footage

The Fourteenth Amendment to the United States Constitution provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. § XIV, § 1. To state a due process claim, "a plaintiff must first show that he has a constitutionally protected liberty or property interest, and that he has been deprived of that protected interest by some form of state action." *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988) (internal quotation marks and citations omitted). Unless the plaintiff makes such showing, "the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." *Id.*; *see also Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) ("Without a protected liberty or property interest, there can be no federal procedural due process claim." (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972))).

In this case, Wall claims that he was not afforded all of the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974). In *Wolff*, the Supreme Court held that an inmate charged with a disciplinary violation implicating a protected liberty interest must receive: (1) advance written notice of the charges against him; (2) an opportunity to call witnesses and present evidence unless doing so would present an undue hazard; (3) a written statement describing the evidence relied on and the reasons for the disciplinary action; and (4) a fair and impartial tribunal. 418 U.S. at 563-71; *see also Lennear v. Wilson*, 937 F.3d 257, 262 (4th Cir. 2019) (holding that, under *Wolff*, "inmates at risk of being deprived of a liberty interest, like good time credits, have a qualified right to obtain and present video surveillance

evidence"). The procedural protections outlined in *Wolff* apply only when a constitutional interest is implicated. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). A prison disciplinary action does not implicate a liberty interest requiring due process safeguards unless it inflicts "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "inevitably affect[s] the duration of his sentence." *Id.* at 484, 487.

According to Wall's second amended complaint and the exhibits referenced therein, Wall lost telephone privileges for 30 days as a result of three of the challenged disciplinary charges and he was ordered to pay a fine and/or restitution as a result of the other challenged charges, one of which was subsequently overturned by Jeffrey Kiser. Courts have consistently held that the loss of telephone privileges does not rise to the level of an atypical or significant hardship deserving of constitutional protection. *See Allen v. Mayo*, No. 1:20-cv-0780, 2021 WL 1753948, at *5 & n.6 (E.D. May 4, 2021) (collecting cases); *see also Almahdi v. Ridge*, 201 F. App'x 865, 869 (3d Cir. 2006) (holding that limitations on telephone privileges do not constitute an atypical and significant hardship). Likewise, "small fines levied against a Virginia state prisoner do not impose such a hardship and therefore do not implicate the Due Process Clause." *Wall v. Rasnick*, No. 7:17-cv-00385, 2021 WL 1108603, at *4 (W.D. Va. Mar. 23, 2021). The court therefore concludes that the punishment imposed for the challenged disciplinary infractions did not implicate a liberty interest requiring the procedural safeguards outlined in *Wolff*. The State Defendants' motion to dismiss will be granted with respect to this claim.

### b.     Denial of hearings and meaningful periodic reviews

As part of Claim II, Wall also alleges that he was held in segregation or solitary confinement without receiving due process. (Second Am. Compl. ¶¶ 113–15.)   More

specifically, Wall contends that he did not receive: (1) any formal or informal hearing before the Dual Treatment Team; (2) any formal or informal hearing before the External Review Team; (3) formal ICA hearings within 90 days; or (4) meaningful periodic reviews. (*Id.*)

To establish a due process violation in this context, a plaintiff must satisfy a two-part test. *Smith v. Collins*, 964 F.3d 266, 274 (4th Cir. 2020). First, he must demonstrate that he had a protected liberty interest in avoiding solitary confinement. *Id.* "To do so, he must be able to show two things: first, that there is a basis for an interest or expectation in state regulations for avoiding such confinement, and second, that the conditions impose[] atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id.* at 275 (alteration in original) (internal quotation marks and citation omitted). If the plaintiff demonstrates that he had a protected liberty interest, he must then establish that the defendants failed to provide "minimally adequate process to protect that liberty interest." *Id.*

In moving to dismiss this claim, the State Defendants advance several arguments. First, as to defendant E. Sowards, the State Defendants argue that Wall has not plausibly alleged that Sowards was personally involved in the denial of due process. Sowards is identified as a counselor at Red Onion. (Second Am. Compl. ¶ 15.) Wall alleges that Sowards was one of three people who told him that he would be released from segregation during his next 90-day review despite the fact that he had verbally complained about VDOC Operating Procedures not being followed. (*Id.* ¶ 57.) Wall further alleges that Sowards informed him that the decision to keep him in segregation was made by Unit Manager Collins rather than the Dual Treatment Team. (*Id.* ¶ 65.) Neither of these allegations suggest that Sowards was personally involved in the denial of hearings or meaningful periodic reviews pertaining to Wall's placement in solitary

confinement. In the absence of any other allegations implicating Sowards in the alleged denial of adequate procedural protections, the due process claim will be dismissed as to Sowards.

The State Defendants have also moved to dismiss this claim with respect to J. Artrip and I. Hamilton. Artrip and Hamilton are the Assistant Wardens at Red Onion who were responsible for responding to certain grievances filed by Wall. (Second Am. Compl. ¶ 7; *see also id.* ¶ 31(alleging that a grievance was deemed unfounded by Hamilton); *id.* ¶¶ 41, 46, 53, 63, 68, 78, 88, 102, 103 (alleging that grievances were deemed unfounded by Artrip)). As the State Defendants correctly point out, "the mere fact of denying a prison grievance does not establish a constitutional violation or Section 1983 claim." *Rowe v. Clarke*, No. 3:18-cv-00780, 2019 WL 2477612, at *4 (E.D. Va. June 13, 2019); *see also George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation."). Because the allegations implicating Artrip and Hamilton are limited to their involvement in responding to grievances regarding the alleged denial of due process, the court concludes that the allegations do not state a viable claim against these defendants.

For similar reasons, the court concludes that Wall has failed to state a claim against M. Elam, M. Taylor, and Harold Clarke. Wall alleges that Elam upheld certain grievance decisions at the second level of the grievance process, and that he sent Taylor, the "Regional Operations Chief," two letters "detailing several of the due process violations" that he purportedly experienced at Red Onion. (Second Am. Compl. ¶¶ 52, 69.)  Wall likewise alleges that Clarke "knew or should have known" of the due process violations as a result of his complaint letters. (*Id.*  ¶ 115.) Wall's allegations in this regard do not plausibly suggest that these supervisory

officials were personally involved in the alleged denial of due process. *See Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) (explaining that "a prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the requisite personal involvement"); *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir. 1997) (holding that the receipt of two letters from an inmate complaining of alleged due process violations was insufficient to demonstrate the requisite personal involvement on the part of a prison administrator). Nor do the allegations state a viable claim of supervisory liability under the governing standard. *See Wilkins*, 751 F.3d 214 at 226; *Shaw*, 13 F.3d at 799. Accordingly, the due process claim will be dismissed as to Artrip, Hamilton, Elam, Taylor, and Clarke.

Finally, with respect to Lt. J. Kiser, A. Gallihar, W. Swiney, A. Duncan, L. Collins, S. Day, C. Gilbert, G. Adams, C. Stanley, J. Lambert, R. Kegley, and R. Boyd, the State Defendants acknowledge that these defendants arguably "were involved with the providing or withholding of the various hearings for which Wall claims are at issue." (Mem. in Supp. of Mot. to Dismiss 15–16 [ECF No. 78].) The State Defendants also acknowledge that courts have ruled that the VDOC's Step-Down Program creates a liberty interest in avoiding long-term segregation, and they do not dispute that the conditions of solitary confinement described in the second amended complaint, which Wall allegedly endured for over three years, are plausibly harsh and atypical in comparison to the ordinary incidents of prison life. (*Id.* at 16); *see also Smith*, 964 F.3d at 269, 281 (holding that a genuine dispute of material fact existed as to whether similar conditions of confinement in segregation imposed an atypical and significant hardship); *Thorpe v. Va. Dep't of Corr.*, No. 2:20-cv-00007, 2021 WL 2435868, at *4 (W.D. Va. June 15, 2021) (holding that the conditions of confinement alleged in the complaint

were plausibly harsh and atypical where the plaintiffs alleged that they were deprived of meaningful human contact for 22 hours a day, endured daily cavity searches, and lacked access to most educational programming).[4] Instead, the State Defendants argue that Wall's second amended complaint does not adequately "explain why he believes that [the periodic reviews he received while in segregation] were meaningless or otherwise deficient." (Mem. in Supp. of Mot. to Dismiss at 17.) Upon review of the pleading, however, the court disagrees.

The Supreme Court has made clear that "administrative segregation may not be used as a pretext for indefinite confinement of an inmate," and that "[p]rison officials must engage in some sort of periodic review of the confinement of such inmates." *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983). Although the periodic review "need not be extensive, . . . the review must be meaningful; it cannot be a sham or a pretext." *Toevs v. Reid*, 685 F.3d 903, 912 (10th Cir. 2012); *see also Williamson*, 912 F.3d at 183 (noting that the periodic reviews required under *Hewitt* "must be meaningful enough to take into account the 'facts relating to a particular prisoner'") (quoting *Hewitt*, 459 U.S. at 477 n.9); *Incumaa v. Stirling*, 791 F.3d 517, 533 (4th Cir. 2015) (holding that a triable dispute existed as to whether the defendants had provided the plaintiff with a sufficient level of process, since the record was "bereft of any evidence" that the plaintiff "ever received meaningful review"). Here, in addition to alleging that he was denied certain hearings or reviews altogether, Wall alleges that the periodic reviews that he did receive were deficient because reviewing officials simply "rubber-stamped" the initial

---

[4] *Thorpe* is a putative class action brought by twelve Virginia inmates who have been held in solitary confinement, including Wall. *See* Compl., *Thorpe v. Va. Dep't of Corr.*, No. 2:20-cv-00007 (May 6, 2019). At this stage of the proceedings, there has been no suggestion that Wall's segregation-related claims are duplicative of those raised in *Thorpe*.

recommendation that he remain in segregation, "making [the] 'ALLEGED' multi-layered reviews illusory and inadequate." (Second Am. Compl. ¶¶ 56, 108, 113–15.) At this stage of the proceedings, Wall's allegations are sufficient to plausibly suggest that he did not receive meaningful periodic reviews to determine whether he should remain in solitary confinement. *See Incumaa*, 791 F.3d at 534 (emphasizing that the Institutional Classification Committee "merely rubber-stamped Appellant's incarceration in [solitary confinement] figuratively and sometimes literally, listing in rote repetition the same justification every 30 days"). Accordingly, the motion to dismiss this portion of Claim II will be denied with respect to Lt. J. Kiser, A. Gallihar, W. Swiney, A. Duncan, L. Collins, S. Day, C. Gilbert, G. Adams, C. Stanley, J. Lambert, R. Kegley, and R. Boyd.[5]

### 3.    Claim III

#### a.    Excessive Force and Failure to Intervene

In Claim III, Wall asserts several claims under the Eighth Amendment. First, Wall alleges that J. Dickenson, A. Mullins, and B. Begley used excessive force against him in violation of the Eighth Amendment by aggressively pulling his arms through a tray slot, causing injuries to his wrists and forearms. Wall further alleges that L. Collins and C. Gilbert "witnessed the assault and failed to intervene," and that R. Boyd and J. Artrip exhibited deliberate indifference "by failing to take remedial actions . . . after being made aware of this assault." (Second Am. Compl. ¶ 116.) Additionally, Wall asserts that L. Collins, A. Duncan, I. Hamilton, J. Artrip, A. Gallihar, M. Taylor, M. Elam, Jeffrey Kiser, and Harold Clarke are

---

[5] The due process claim will also proceed against Jeffrey Kiser, who is named as a defendant but not specifically addressed in the relevant portion of the State Defendants' memorandum in support of their motion to dismiss. (*See* Mem. in Supp. of Mot. to Dismiss at 14–17.)

subject to supervisory liability for the use of excessive force and other alleged misconduct. (*Id.*)

The State Defendants do not challenge the sufficiency of Wall's allegations with respect to his claims of excessive force and failure to intervene against J. Dickenson, A. Mullins, B. Begley, L. Collins, and C. Gilbert.[6] They do, however, argue that Wall's allegations against R. Boyd and J. Artrip fail to state a claim upon which relief may be granted, and that Wall fails to state a claim of supervisory liability against the other identified defendants. For the following reasons, the court agrees.

With respect to R. Boyd and J. Artrip, the State Defendants correctly contend that the failure to take remedial action *after* an alleged constitutional violation does not cause or contribute to such violation or otherwise provide a basis for liability under § 1983. *See, e.g.*, *Cox v. Sugg*, 484 F.3d 1062, 1066 (8th Cir. 2007) ("In general, supervisors . . . are liable under § 1983 for a subordinate's violation of a third person's constitutional injury only if their deliberate indifference to the offensive conduct and failure to take adequate remedial action proximately caused the injury."); *Schofield v. Magrey*, No. 3:12-cv-00544, 2015 WL 521418, at *11 (D. Conn. Feb. 9, 2015) ("Plaintiff contends that Chief Reed is liable for his failure to discipline Officer Madore after his conduct in this case, but . . . any such failure to discipline after the fact cannot have caused Plaintiff's injuries and therefore is not actionable under § 1983."). Consequently, the allegations against Boyd and Artrip fail to state a claim.

Wall seeks to hold L. Collins, A. Duncan, I. Hamilton, J. Artrip, A. Gallihar, M. Taylor, M. Elam, Jeffrey Kiser, and Harold Clarke liable for the use of excessive force and other

---

[6] Defense counsel has filed an answer on behalf of these defendants. (*See* Answer, ECF No. 76.)

alleged misconduct under the theory of supervisory liability outlined above. (*See* Am. Compl. ¶ 117 (citing *Shaw*, 13 F.3d at 799).) Having reviewed the second amended complaint, the court concludes that it fails to state a viable claim of supervisory liability against the named defendants. Although the pleading recites the elements enunciated in *Shaw*, it does not plausibly allege that the identified defendants knew that any subordinate officer "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury." *Id.*; *see also Twombly*, 550 U.S. at 555 (emphasizing that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do"). Accordingly, this portion of Claim III will be dismissed.

### b.    Conditions of Confinement

Liberally construed, Claim III also asserts a conditions-of-confinement claim under the Eighth Amendment against Harold Clarke, Jeffrey Kiser, M. Taylor, L. Collins, J. Artrip, and M. Elam. In particular, Wall alleges that his conditions of confinement in segregation posed a substantial risk of serious psychological and emotional harm; that these defendants had knowledge of the risk posed by the conditions of confinement; and that they acted with deliberate indifference to that risk. (*Id.*; *see also id.* ¶ 33 (describing the conditions of confinement).) Wall cites to a case from the Eastern District of Virginia in which similar conditions of confinement were deemed to violate the Eighth Amendment. (*Id.* ¶ 33 (citing *Porter v. Clarke*, 290 F. Supp. 3d 518, 530–33 (E.D. Va. 2018), *aff'd*, 923 F.3d 348 (4th Cir. 2019)).)

The State Defendants do not address this particular claim in the memorandum filed in support of their motion to dismiss. Consequently, it remains pending.

### 4.      Claim IV

In Claim IV, Wall alleges that all of the named defendants conspired to violate his constitutional rights. To establish a civil conspiracy under § 1983, a plaintiff must allege facts indicating that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). The plaintiff's allegations "must, at least, reasonably lead to the inference that [the] defendants positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.* "Where the complaint makes only conclusory allegations of a conspiracy under § 1983 and fails to demonstrate any agreement or meeting of the minds among the defendants, the court may properly dismiss the [conspiracy claim]." *Brown v. Angelone*, 938 F. Supp. 340, 346 (W.D. Va. 1996).

In this case, the second amended complaint is devoid of factual allegations suggesting that an agreement or meeting of the minds existed between any of the defendants. Instead, Wall merely asserts, in conclusory fashion, that the defendants "act[ed] in concert" to violate his constitutional rights. (Second Am. Compl. ¶ 118.) Such conclusory allegations are insufficient to state a plausible conspiracy claim. *Brown*, 938 F. Supp. at 346; *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (explaining that "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed") (internal quotation

marks and citation omitted); *Delk v. Moran*, No. 7:16-cv-00554, 2018 WL 1513296, at *8 (W.D. Va. Mar. 27, 2018) (emphasizing that "[m]erely labeling a chronological series of actions by multiple defendants as 'conspiracy' or providing only a conclusory, formulaic recitation of the legal elements of conspiracy will not do"). Therefore, the State Defendants' motion to dismiss will be granted as to Claim IV.

### B. Claims under state law

In addition to his claims under § 1983, Wall asserts the following claims under state law: claims of assault and battery against J. Dickenson, A. Mullins, and B. Begley; and a claim of willful and wanton negligence against various defendants. The State Defendants have only moved to dismiss the latter claim.

"Under Virginia law, '[t]he elements of an action in negligence are a legal duty on the part of the defendant, breach of that duty, and a showing that such breach was the proximate cause of injury, resulting in damage to the plaintiff.'" *Willner v. Dimon*, 849 F.3d 93, 113 (4th Cir. 2017) (quoting *Blue Ridge Serv. Corp. of Va. v. Saxon Shoes, Inc.*, 624 S.E.2d 55, 62 (Va. 2006)). "Willful and wanton negligence is one of three levels of negligence." *Harris v. Harman*, 486 S.E.2d 99, 101 (Va. 1997). This level of negligent conduct involves "acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 919 (Va. 2004) (internal quotation marks and citations omitted); *see also Harris*, 486 S.E.2d at 102 (noting that "[w]hile each case must be resolved on its own facts, willful and wanton negligence generally involves some type of egregious conduct—conduct going beyond

that which shocks fair-minded people").

Here, Wall merely asserts, in conclusory fashion, that various defendants "were willfully and wantonly negligent in their duties." (Second Am. Compl. ¶ 120.) The court agrees with the State Defendants that such conclusory statements do not meet the pleading standard set forth in *Twombly* and *Iqbal. See Hernandez v. Brewer*, 658 F. App'x 837, 839 (9th Cir. 2016) (holding that the district court properly concluded that the plaintiff made only conclusory statements as to his claims of negligence and gross negligence, and "he therefore failed to satisfy the pleading standard"); *Watkins v. Balt. City*, No. 20-208, 2021 WL 4342089, at *3 n. 8 (D. Md. Sept. 23, 2021) (noting that "summary and conclusory allegations" of negligence and gross negligence "are insufficient to state a cause of action"). Accordingly, the motion will be granted as to Claim VI.

## V.   CONCLUSION

For the reasons stated, the court will grant in part and deny in part the State Defendants' motion to dismiss. The case will proceed on the following claims: the retaliation claim against L. Collins, A. Duncan, Lt. J. Kiser, Lt. G. Adams, R. Boyd, Lt. J. Lambert, Sgt. B. Meade, Sgt. J. Dickenson, K. Moore, J. Looney, and E. Sowards; the due process claim related to Wall's long-term confinement in segregation against Lt. J. Kiser, A. Gallihar, W. Swiney, A. Duncan, L. Collins, S. Day, C. Gilbert, G. Adams, C. Stanley, J. Lambert, R. Kegley, R. Boyd, and Jeffrey Kiser; the claims of excessive force and failure to intervene against J. Dickenson, A. Mullins, B. Begley, L. Collins, and C. Gilbert; the claim challenging the conditions of solitary confinement against Harold Clarke, Jeffrey Kiser, M. Taylor, L. Collins,

J. Artrip, and M. Elam; and the claims of assault and battery against J. Dickenson, A. Mullins, and B. Begley.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 22nd day of November, 2021.


*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE